IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BARRY W. ADAMS,                )
                               )
           Plaintiff,          )
                               )
     v.                        )
                               )  Civil Action NO: 1:04-cv-00358-KAJ
JOANNE B. BARNHART,            )
COMMISSIONER OF SOCIAL         )
SECURITY,                      )
                               )
           Defendant.          )
                               )

## MEMORANDUM OPINION

Michael J. Goodrick, P.A., 18B Trolley Square, P.O. Box 134, Wilmington, Delaware 19899, Counsel for Plaintiff

Paulette K. Nash, United States Attorney; Colm F. Connolly, United States Attorney; The Nemours Building, 1007 Orange Street, Suite 700, P.O. Box 2046, Wilmington, Delaware 19899-2046, Counsel for Defendant
    Of Counsel: David F. Chermol, Special Assistant United States Attorney; Donna L. Calvert, Regional Chief Counsel; Office of General Counsel, Social Security Administration, P.O. Box 41777, Philadelphia, Pennsylvania 19101.

October 17, 2005



JORDAN, District Judge

I.  **INTRODUCTION**

Before me is a motion for summary judgment (Docket Item ["D.I."] 11) brought by plaintiff, Barry W. Adams ("Adams"), and a cross-motion for summary judgment (D.I. 12) brought by defendant, Commissioner of Social Security ("Commissioner"). Adams brings this action under 42 U.S.C. § 405(g), seeking review of the Commissioner's final decision denying him disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-34. Jurisdiction is proper under 28 U.S.C. § 1331 and 42 U.S.C. § 405(g).

II. **BACKGROUND**

A.  Procedural History

On November 6, 2002, Adams applied for disability benefits, alleging that he was injured in June of 2000. (D.I. 11 at 4; D.I. 13 at 1.) After the application was denied initially and upon reconsideration, Adams filed a request for a hearing before an administrative law judge ("ALJ"), which hearing was subsequently held on December 3, 2003. (Id.) At the hearing, Adams was represented by counsel and testified on his own behalf; a vocational expert also testified. (D.I. 7 at 24, 48.) On December 19, 2003, the ALJ concluded that Adams was not disabled within the meaning of the Act. (Id. at 12.)

Adams then appealed the ALJ's decision to the Appeals Council of Social Security. (Id. at 9.) On April 13, 2004, the Appeals Council "found no reason . . . to review the [ALJ's] decision," thereby denying Adam's request. (Id. at 5.) Therefore, the December 19, 2003 decision of the ALJ became the final decision of the

Commissioner. See 20 C.F.R. §§ 404.955, 404.981, 422.210; see also Sims v. Apfel, 530 U.S. 103, 106-07 (2000) (noting that, if Appeals Council denies request for review, ALJ's decision becomes Commissioner's final decision); Matthew v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (same). Adams now seeks review by this Court under 42 U.S.C. § 405(g). (D.I. 11 at 4.)

    B.    Facts

Adams was forty-one on the date of the ALJ's decision of December 14, 2003. (D.I. 7 at 16.) He earned his GED and worked as a maintenance mechanic for several years. (Id. at 26.) Adams alleges an inability to work due to a work-related injury on June 7, 2000. (D.I. 11 at 5.) On that date, he was helping a co-worker move a motor weighing approximately 200 pounds. (D.I. 7 at 16, 28.) While carrying the motor, his co-worker stumbled, causing Adams to pull back, at which point he felt a sharp pain in his left shoulder and neck. (Id.) He had not worked since his left shoulder surgery in August of 2002, which is his alleged onset date.[1] (Id. at 17, 29.) Adam's claims to have disabling pain in his shoulder, neck, and back. (Id. at 16.)

    1.    Medical Evidence

In 2002, after undergoing treatment with several doctors, Adams sought treatment with Dr. Kahlon of First State Orthopaedics, P.A. with the same complaints of left shoulder and neck pain. (Id. at 447.) In August of 2002, Dr. Kahlon performed

---

[1] Although Adams had initially alleged disability as of his injury in June 2000, he testified that he engaged in gainful employment until his surgery and that his actual onset date was August of 2002. (D.I. 7 at 29.) ALJ focused on the medical records after August 2002 because, pursuant to 20 C.F.R. § 404.1520(b), a person who is working in substantial gainful activity is not disabled, regardless of his medical condition or personal profile.

surgery[2] on Adams's left shoulder. (*Id.* at 220.) Afterwards, Adams was seen for physical therapy at Pro Physical Therapy. (*Id.* at 252.) His shoulder pain had improved after the surgery, but he said his neck felt worse. (*Id.* at 306.) He, however, was not taking any pain medication at that time. (*Id.*) Furthermore, Adams complained that the pain was different than his preoperative pain and was more anterior and deeper, and Dr. Kahlon determined that Adams had subsequently developed postoperative biceps tendonitis. (*Id.* at 443.) In September of 2002, Adams told Dr. Kahlon's staff assistant that he was working half days because of his shoulder pain. (*Id.* at 445.)

In October of 2002, he continued to experience pain at the base of his neck on the left side, which radiated across the posterior and anterior aspect of his shoulder. (*Id.* at 303.) He then received left C5-T1 facet joint nerve blocks at Mid-Atlantic Pain Institute. (*Id.* at 299.) He said that he had worse pain in the left upper trapezius since the blocks and complained of numbness in his left arm. (*Id.* at 294.) At the end of 2002, Adams continued to complain of neck and shoulder pain that was present all day long. (*Id.* at 284.) He stated that it was better with medication, and he also rated his pain 5 out of 10 whereas, a couple weeks before, he rated it at 8 out of 10. (*Id.*) The doctor's impression included "cervical facet dysfunction; cervical and upper thoracic posterior element dsyfunction; intermittent radiculopathy in a C8 distribution; chronic neck pain, possibly discogenic in etiology; [and] cervical myofascial pain." (*Id.* at 285.)

---

[2]The procedure was described as, "left shoulder arthroscopy with arthroscopic cervical decompression, distal clavical excision, and limited glenohumeral joint debridement." (D.I. 7 at 220.)

-3-

He rated how much the pain interfered with his ability to work, to sleep, and to do household chores as seven out of ten. (*Id.* at 288.)

In 2003, Adams stated that his shoulder and neck were still bothering him but felt that his shoulder pain was minimal if his neck pain was brought under control. (*Id.* at 477.) Dr. Rudin of First State Orthopaedics, P.A. also stated that Adams complained of constant midline low cervical pain and of constant numbness in his left third, fourth, and fifth fingers. (*Id.* at 441.) MRI testing showed that Adams had mild kyphosis and bulging and central disc bulging and mild anterior spur formation. (*Id.* at 480.) Dr. Kahlon released Adams to return to work without restrictions on April 3, 2003. (*Id.* at 479.)

Four days later, on April 7, 2003, Dr. Zerefos, a specialist in muscloskeletal injuries, determined that Adams had persistent tendinitis/bursitis of the left shoulder and chronic cervical and upper thoracic muscle sprain/strain secondary to work-related injury. (*Id.* at 481-82.) He found Adams disabled and wrote a note for him to remain out of work until the end of the month. (*Id.* at 482.) However, in July of 2003, Dr. Falco of Mid-Atlantic Pain Institute, declined Adam's request for a disability form without a functional capacity evaluation. (*Id.* at 489.)

Adams had had a Physical Residual Functional Capacity Assessment in January 2003, which stated that Adams can occasionally lift or carry 50 pounds, frequently lift or carry 25 pounds, and stand, walk and sit for about 6 hours in an 8-hour workday. (*Id.* at 431.) However, another Physical Residual Functional Capacity Assessment performed in March of 2003 states that Adams can occasionally lift or carry 20 and frequently lift or

carry 10 pounds. (*Id.* at 459.) Furthermore, Dr. Nicholas Biasotto, Adam's family doctor, submitted a residual functional capacity report in November of 2003 that indicated that Adams could lift or carry 10 pounds occasionally, stand and walk for less than 2 hours, and sit for about 2 hours. (*Id.* at 494.) Dr. Biasotto also noted that Adams would be absent from work more than three times a month if he returned to work. (*Id.* at 497.)

    2.    <u>ALJ's Decision</u>

To determine whether a claimant is entitled to social security disability benefits, an ALJ applies a sequential five-step inquiry pursuant to 20 C.F.R. § 404.1520. *See Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (establishing five steps); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986) (same).

> Under that five step analysis, the [ALJ] determines first whether an individual is currently engaged in substantial gainful activity. If that individual is engaged in substantial gainful activity, he will be found not disabled regardless of the medical findings. If an individual is found not to be engaged in substantial gainful activity, the [ALJ] will determine whether the medical evidence indicates that the claimant suffers from a severe impairment. If the [ALJ] determines that the claimant suffers from a severe impairment, the [ALJ] will next determine whether the impairment meets or equals a list of impairments in Appendix 1 of sub-part P of Regulations No. 4 of the Code of Regulations. If the individual meets or equals the list of impairments, the claimant will be found disabled. If he does not, the [ALJ] must determine if the individual is capable of performing his past relevant work considering his severe impairment. If the [ALJ] determines that the individual is not capable of performing his past relevant work, then she must determine whether, considering the claimant's age, education, past work experience and residual functional capacity, he is capable of performing other work which exists in the national economy.

*Brewster*, 786 F.2d at 583-84 (internal citations omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

In this case, after applying the five-step evaluation, the ALJ concluded that Adams is not disabled as defined in the Social Security Act. (D.I. 7 at 15.) The ALJ first determined that Adams had not engaged in substantial gainful activity since the alleged onset of his disability.[3] (Id. at 16.) Next, the ALJ determined that, although his left shoulder injury was a severe impairment, it was not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Id. at 17.) Then, the ALJ evaluated his residual functional capacity[4] to determine whether he was able to return to his past relevant work.[5] (Id. at 17.) After reviewing all medical evidence and considering all of his symptoms, including pain, the ALJ found that Adams retains the residual functional capacity for light work with no use of his non-dominant upper extremity. (Id. at 18.) Thus, the ALJ concluded that he was not capable of performing his past relevant work, which was medium exertional work as a maintenance mechanic. (Id. at 19.)

---

[3]Adams apparently received the benefit of the doubt on this point, since the record plainly indicates he was working half-days after the alleged August 2002 onset. (See D.I. 7 at 445, noting Adams's statement in September 2002 that he was working half-days.)

[4]The ALJ defined "residual functional capacity" as "the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks." (D.I. 7 at 17 (paraphrasing definition from 20 C.F.R. § 404.1545 and Social Security Ruling 96-8p).)

[5]Under 20 C.F.R. § 404.1565, "past relevant work" is defined as work performed within the last fifteen years or fifteen years prior to the date that disability must be established. (D.I. 7 at 18.) "In addition, the work must have lasted long enough for the claimant to learn to do the job and meet the definition of substantial gainful activity." (Id. at 18-19.)

Last, to determine whether Adams was capable of other work that existed in the national economy, the ALJ viewed Adam's age, education, physical ability, and work experience in conjunction with the Medical-Vocational Guidelines of Appendix 2 of Subpart P of the Regulations ("grid rules"). (*Id.*) According to the grid rules, a claimant, aged 18-44 with a high school education and the residual functional capacity of light work, is not disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Tbl. 2, R. 201.21. The ALJ also referred to a vocational expert to determine whether additional exertional and/or non-exertional limitations would impede Adams's ability to perform most of the requirements of light work. (D.I. 7 at 19.) Based on testimony from the vocational expert, the ALJ determined that Adams "is capable of making a successful adjustment to work that exists in significant numbers in the national economy." (*Id.* at 20.) The ALJ, therefore, found that Adams was not disabled within the meaning of the Social Security Act. (*Id.*)

III.  **STANDARD OF REVIEW**

Judicial review of the denial of an application for Social Security benefits is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *see Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (defining "substantial evidence"). Substantial evidence is "more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## V.  DISCUSSION

Adams claims that the findings of the ALJ are not supported by substantial evidence. (D.I. 11 at 4.) Specifically, he argues that the ALJ failed to consider the opinion of Adam's long standing physician, Dr. Biasotto, and the effects of his medication. (*Id.* at 4.) He asserts that the ALJ instead unduly emphasized that Dr. Kahlon released him to work without restriction and that Adams was capable of performing household chores. (*Id.* at 4-5.) Furthermore, Adams argues that the ALJ's decision was based on a flawed hypothetical to the vocational expert. (*Id.* at 5.)

### A.  Whether the ALJ improperly gave greater weight to Dr. Kahlon's conclusions than that of Dr. Biasotto

Adams submits that the ALJ gave undue weight to a "check off form" filled out by Dr. Kahlon and insufficient weight to the opinion of Dr. Biasotto. (*Id.* at 13-14.) On the contrary, the ALJ did not place undue emphasis on the "check off form" and had merely noted that Dr. Kahlon had released Adams to work without restrictions, information listed in the "check off form." (D.I. 7 at 17.) This fact was only one element of the entire record considered by the ALJ. (*Id.* at 17-18.) Furthermore, the ALJ did not afford controlling weight to the statements of Adam's family doctor, Dr. Biasotto, because Dr. Biasotto was not a specialist and his report contradicts that of two specialists, Dr. Kahlon and Dr. Falco. (*Id.* at 18.) Dr. Biasotto also made conclusions without any supporting evidence (*Id.* at 18, 493-500.), whereas Dr. Kahlon's conclusions were based on physical examinations, X-rays, MRIs, and EMGs. (*Id.* at 440-51.) Therefore, ALJ's decision to afford greater weight to Dr. Kahlon's statements than that of Dr. Biasotto is supported by substantial evidence.

B.   Whether the ALJ improperly assessed the evidence

Adams argues that the ALJ did not fully evaluate the evidence because the ALJ failed to consider the effects of his medication. (D.I. 11 at 14-15.) Adams further argues that, because of the ALJ's incorrect assessment, he did not consider the vocational expert's testimony that the side effects of the medication would render Adams unemployable. (Id. at 16-17.) Adams claims that the medication causes him to be in a "stupor" (id. at 15), but nowhere in the medical record does it indicate such a fact. To support his claim, Adams refers only to his own testimony that the medication makes him feel drowsy and nauseous. (Id. at 15; D.I. 7 at 43-44.) "Drowsiness [and other side effects] often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations." Burns v. Barnhart, 312 F.3d 113, 131 (3d Cir. 2002). The ALJ was thus justified in not considering the alleged effects of Adams's medication.

Additionally, Adams contends that the ALJ improperly relied on a disability report performed by an administrative agent and a daily activities questionnaire to discredit Adams's testimony regarding his degree of limitation and impairment. (D.I. 7 at 18.) The reviewing court usually defers to the ALJ's credibility determinations, but such deference does not extend to decisions without sufficient evidentiary support. See Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003) (stating that ALJ failed to explain discrediting certain evidence and not others). Moreover, the ALJ as the trier of fact has the duty to resolve a situation of conflicting medical evidence. Richardson v. Perales, 402 U.S. 389, 399 (1971) (finding that claimant and his personal physician's claim of

disability is not substantial evidence "when it stands alone and is opposed by live medical evidence and the client's own contrary personal testimony"). In this case, in support of his decision to discount Adams's testimony, the ALJ examined the entire medical record and referred to Adams's own contrary statements in a daily activities questionnaire, his demeanor at the hearing, and personal observations by an administrative agent. (D.I. 7 at 18.) Therefore, the ALJ provided substantial evidence to reject Adams's testimony.

### V.   **CONCLUSION**

For the reasons stated, the Commissioner's motion (D.I. 12) will be granted, and Adams's motion (D.I. 11) will be denied. An appropriate order will issue.